UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NATIONAL LIABILITY & FIRE
INSURANCE CO,

       Plaintiff,

-against-

RICK'S MARINE CORP. and ADAM
WEINSTEIN,
      Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-6352 (DRH)(ARL)

**APPEARANCES ON THE MOTION:**

**For Plaintiff:**
Nicoletti Horning & Sweeney
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
By: William M. Fennell, Esq.


**For Defendant Rick's Marine Corp.:**
Law Offices of E. Michael Rosenstock, P.C.
55 Maple Avenue, suite 206
Rockville Centre, New York 11570
By: E. Michael Rosenstock, Esq.

**HURLEY, Senior District Judge:**

  The purpose of this Memorandum is to address the motion of plaintiff National Liability & Fire Insurance Co, ("National" or "Plaintiff") for civil contempt against Defendant Rick's Marine Corp. ("RMC") for "RMC's willful refusal to comply with this Court's Judgment."  Pl.'s Mem. in Supp. (DE 95-20) at 4. For the reasons set forth below, the motion is denied.

I.  **Background**

This action arises from the sinking of a marine pleasure vessel, the Pelagic, which was owned by defendant Adam Weinstein ("Weinstein"), and serviced, stored and launched by Richard Dillworth ("Dillworth"), the owner and operator of RMC. Upon being launched at the RMC boatyard on May 8, 2015 – after being stored at that location for the winter of 2014-2015 – it sank within hours. As a result of its sinking, the Pelagic was declared a total loss, leading National, as the insurer of the vessel, to pay the $290,000 face amount of the policy to its insured Weinstein. Weinstein then transferred Pelagic's title to Plaintiff as the subrogee of its perceived causes of action against RMC for the sinking.

RMC maintained that it was the aggrieved party. It asserted that the boat was delivered to the marina in the Fall of 2014 for repairs, winter storage, and for launching in the Spring with a causative latent defect and sought to recover damages to the dock to which the Pelagic was tethered at the time of its submersion. In addition, RMC refused to release the Pelagic, such as it was, to National until it was paid certain sums predicated on an asserted maritime lien.

The case was tried before this Court, non-jury. On March 11, 2020, the Court issued its findings of fact and conclusions of law. (*See* DE 84.) As relevant to the present dispute, the Court found that National proved its negligence claim against RMC and was entitled to judgment against RMC in the amount of $290,000.00; RMC was entitled to judgment against Weinstein for outstanding pre-sinking

repairs and against National for outstanding post-transfer storage fees; and upon satisfaction of the judgment for pre-sinking repairs and post-transfer storage, National was entitled to possession of Pelagic and upon payment of the judgment amounts for repair and storage fees, RMC was to "immediately make the Pelagic available for removal from the marina at National's expense." (DE 84 at 32.) On March 16, 2020, judgment was entered (the "Judgment"). The portion of the Judgment giving rise to the present dispute declared that: "upon satisfaction of the judgment for the outstanding repair bill and the outstanding storage fees, National is entitled to possession of the Pelagic and accordingly, upon such payment RMC shall immediately make the Pelagic available for removal from the marina at National's expense." (Judgment (DE 85) at 3.)

## II.   The Present Dispute

By this motion National requests an order, pursuant to Rule 70 of the Federal Rules of Civil Procedure, holding RMC in contempt of the Judgment because RMC did not release the Pelagic until July 31, 2020 even though as of March 20, 2020, both the outstanding repair judgment and the outstanding storage fees judgment were paid. This, posits National, violated the Judgment's provision that RMC immediately make the vessel available for removal from the marina at National's expense. The delay, it is claimed, resulted principally from RMC's claims that not only could it not launch the boat, but that it had no obligation to do so despite the fact that "[t]he Judgment was understood to mean that RMC would

make the vessel immediately available in the same location as RMC had originally taken possession of the vessel, i.e. afloat dockside at RMC's marina." (Pl.'s Mem. in Supp. (DE 95-20) at 6.) National does not claim that the delay resulted in a decrease in the value of the Pelagic; rather, it seeks as damages for the contempt an award of $16,989.90, consisting of $16,023.50 in attorneys' fees and $966.40 in costs "incurred in connection with its efforts to compel RMC to comply with the Court's Judgment." (Fennel Declar. (DE 95-1) at ¶ 20.)

According to RMC, it diligently attempted to comply with the directive "to immediately make the Pelagic available for removal" and that the "Pelagic was always 'available for removal' after entry of the Judgment -- if National could figure out a way to remove it safely." Because of COVID 19 restrictions which prevented it from operating as usual and because the Pelagic was blocked by other boats that had been stored on land by RMC long before the Judgment was entered, RMC claims that the Pelagic "could not be immediately removed by the standard method of a water launch . . . (RMC Mem. in Opp. (DE 95-26) at 3), and that it made diligent efforts to cooperate and effectuate the Judgment's provision to make the Pelagic available for removal and paying National the $290,000.00 monetary award. (*Id.* at *passim*.) Moreover, RMC argues that National's contention that the Judgment "was understood to mean that RMC would make the vessel immediately available . . . afloat dockside at RMS' marina" is erroneous. (*Id.* at 3.)

### III. The Motion for Contempt is Denied

#### A. Relevant Standard

Rule 70(e) "provides a remedy of contempt if a party fails to comply with a judgment requiring the performance of a specific act." *Ecopetrol S.A. v. Offshore Expl. and Prod. LLC*, 172 F. Supp. 3d 691, 695 (S.D.N.Y. 2016). A Rule 70 civil contempt sanction "'serves to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance.'" *Carione v. United States*, 2012 WL 976049, at *7 (E.D.N.Y. Mar. 22, 2012) (quoting *Bd. of Trs. of the Loc. 295/Loc.-I.B.T. Emp. Grp. Pension Tr. Fund v. Hail Air Freight, Inc.*, 2008 WL 1758719 (S.D.N.Y. Apr. 16, 2008) (internal quotation marks and citation omitted)).

"In order to establish contempt, a movant must show by clear and convincing evidence: (1) a clear and unambiguous order; (2) clear and convincing proof of noncompliance of the order; and (3) that the contemnor has not diligently attempted to comply in a reasonable manner." *Id.* (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423–24 (2d Cir. 2003); *accord Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Vintage Flooring & Tile, Inc.,* 2012 WL 2958177, at *2 (S.D.N.Y. July 20, 2012).

#### B. Application to the Present Case

While the Court views RMC's assertion that it diligently attempted to comply with the Judgment's direction regarding the repossession of the Pelagic as

problematic, it is the first prong of the required showing for civil contempt - a clear and ambiguous order - that is determinative of this matter.

"A clear and unambiguous order is one that leaves 'no uncertainty in the minds of those to whom it is addressed,' who 'must be able to ascertain from the four corners of the order precisely what acts are [required or] forbidden.'" *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (C.A.2 (N.Y.),1995) (quoting *Hess v. New Jersey Transit Rail Operations, Inc.,* 846 F.2d 114, 116 (2d Cir.1988) and *Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir.1989)). Ambiguities and omissions must be construed in favor of the alleged contemnor. *Drywall Tapers,* 889 F.2d at 400.

Here, National interprets that language of the Judgment one way, whereas RMC interprets it another, suggesting that the language was not unambiguous. Moreover, on its face, the language of the Judgment regarding RMC's obligation - "to immediately make the Pelagic available for removal from the marina at National's expense" - is untethered to any requirement as to how the vessel was to be made available. Thus, National's motion premised on the assertion that "it was understood" that the vessel would be made available "afloat dockside at the marina," fails. Indeed, given that this action arose from the sinking of the Pelagic, it would be reasonable to assume otherwise.

National's motion for contempt is therefore denied.

## IV.     RMC's Request Pursuant to Local Rule 83.6

In its memorandum. RMC requests that the Court award it, pursuant to Local Rule 83.6, its reasonable attorney's fees and cost in defending against the motion for contempt. (RMC's mem. in Opp. at 2 & 13.) Absent, however, is any discussion as to why "in the discretion of the Court," *see* Local Rule 83.6, such an award is appropriate. Given its failure to satisfactorily address this issue, the request is denied.

## IV.     Conclusion

National's motion pursuant to Fed. R. Civ. Pro. 70 for civil contempt is denied. RMC's request for fees pursuant to Local Rule 83.6. is also denied.

**SO ORDERED.**

Dated: Central Islip, New York           s/ Denis R. Hurley
       May 12, 2021                            Denis R. Hurley
                                                  United States District Judge